**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DON ALBERT PAYNE, GLORIA JEAN PAYNE,** | § § | |
| *Plaintiffs* | § | SA-20-CV-00296-XR |
| | § | |
| **-vs-** | § | |
| | § | |
| **OAKWOOD HOMES,  OAKCREST POINTE,** | § § | |
| *Defendants* | § | |

## REMAND ORDER

On this date, the Court considered its jurisdiction over this removed case. After careful consideration, the Court finds that it lacks subject matter jurisdiction and remands this case.

### Background

Plaintiffs Don Albert Payne and Gloria Jean Payne, acting *pro se*, filed this lawsuit in state court against Defendants Oakwood Homes and Oakcrest Pointe. Plaintiffs' "Original Petition Request for Declaratory Relief" asserts three causes of action: (1) revocation of acceptance and breach of express warranty, (2) violations of the DTPA, and (3) a claim under the Magnuson-Moss Warranty Act ("MMWA"). Each claim arises from Plaintiffs' purchase of a manufactured home and alleged defects therein and failures to cure by Defendants. Despite Plaintiffs assertion within the petition that the $50,000 amount-in-controversy requirement was not met for purposes of the MMWA, Defendants removed the case on March 11, 2020, alleging federal question jurisdiction under the MMWA, or alternatively, under the HUD Code, and supplemental jurisdiction over the state-law claims.

1

**Jurisdictional Analysis**

The Court must first examine its jurisdiction over this case. No motion to remand has been filed, but the Court has a duty to examine its jurisdiction *sua sponte* when necessary. *Howery v. Allstate Ins. Co*., 243 F.3d 912, 919 (5th Cir. 2001). "Federal courts are courts of limited jurisdiction, having only the authority endowed by the Constitution and that conferred by Congress. *Scarlott v. Nissan N.A., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014). "The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc*., 719 F.3d 392, 397 (5th Cir. 2013).

<u>Magnuson-Moss Warranty Act (MMWA)</u>

The MMWA was enacted in 1974 to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). In addition to establishing standards governing the content and availability of warranties, the MMWA creates a statutory cause of action for consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation [imposed by the Act] or under a written warranty, implied warranty, or service contract." *Id*. § 2310(d)(1). The provisions of the MMWA that create a private cause of action permit a "consumer" to sue a warrantor for (1) a violation of the substantive provisions of the Act, or (2) breach of a written or implied warranty. *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1062-63 (5th Cir. 1984). The consumer who is damaged "may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Suit may be brought in state or federal court, but the Act sets an amount-in-controversy requirement for federal courts, providing,

> (3) No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection [*i.e*., in an appropriate district court of the United States] --
>> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;

> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

*Id.* § 2310(d)(3). "Accordingly, federal question jurisdiction under the MMWA is limited to breach-of-warranty claims for which the amount in controversy is at least $50,000." *Scarlott*, 771 F.3d at 887.

The MMWA is virtually silent as to the amount and type of damages that may be awarded for breach of warranty. *Mackenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979). However, the statute provides that nothing in the Act "shall invalidate or restrict any right or remedy of any consumer under State law . . . ." 15 U.S.C. s 2311(b)(1). Thus, courts look to state law to determine the applicable measure of damages, which informs the amount in controversy under the MMWA. *Scarlott*, 771 F.3d at 887. The Fifth Circuit, however, has recognized several limitations in calculating the amount in controversy under the MMWA. First, personal injury damages for breach of warranty, which are not recoverable under the MMWA, may not be counted to satisfy the jurisdictional amount. *Id.* Second, attorney's fees may not be used to satisfy the jurisdictional amount, because the MMWA requires that the amount in controversy be calculated "exclusive of interests and costs," and attorney's fees are viewed as costs for this purpose. *Id*. Third, punitive damages are recoverable under the MMWA for breach of warranty only if they may be recovered in a breach-of-warranty action brought under state law, but Texas law does not allow for punitive damages for breach-of-warranty claims; it permits them only for an independent accompanying tort. *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1070-71 (5th Cir. 1984). Last, damages for any pendent state-law claims should not be included to satisfy the jurisdictional amount. *Scarlott*, 771 F.3d at 887-88.

Thus, in determining whether the amount in controversy is satisfied for the MMWA breach-of-warranty claim, the Court may look only to the amount in controversy for that claim, and must look to Texas law to determine the applicable measure of damages. Texas law allows recovery for the diminished value of the good caused by the breach of warranty. In particular, Texas law states: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." TEX. BUS. & COM. CODE § 2.714(b). Texas law additionally allows recovery of "incidental and consequential damages." §§ 2.714(c), 2.715. Accordingly, under Texas law, the amount in controversy for Plaintiffs' MMWA breach-of-warranty claim equals the diminished value of the mobile home plus incidental and consequential damages. *See Scarlott*, 771 F.3d at 888 ("Accordingly, under Texas law, the amount in controversy for Scarlott's breach-of-warranty claims equals the diminished value of the car plus incidental and consequential damages.").

The standard for determining the amount in controversy depends on whether Plaintiffs demanded a specific amount of damages in the complaint. *Scarlott*, 771 F.3d at 888. If Plaintiffs did demand a specific amount, "[t]he amount stated in the complaint is itself dispositive of jurisdiction if the claim is apparently made in good faith." *Id.* If Plaintiffs did not demand a specific amount, the removing defendants have the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. *Id.* (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)) ("When the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [the jurisdictional requirement]."). There are two ways that

4

this burden can be met. "First, a court can determine that removal was proper if it is facially apparent that the claims are likely above [the jurisdictional amount]." *Id.* (citing *Allen v. R & H Oil & Gas Co*., 63 F.3d 1326, 1335 (5th Cir. 1995)). Second, "[i]f it is not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." *Id.* (citing *White v. FCI USA, Inc*., 319 F.3d 672, 675 (5th Cir. 2003) (quoting *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.1998)).

Plaintiff's state-court petition expressly alleges that federal district courts lack jurisdiction over this matter because the amount in controversy is insufficient for jurisdiction under the MMWA. Further, in a section of the petition headed "Magnuson-Moss Warranty Act," the petition alleges, "PLAINTIFFS remit any recovery above $49,999.99 Dollars above the jurisdictional threshold." Pet. ¶ 42. Plaintiffs contend that Defendants will try to remove, but the jurisdictional minimum is not satisfied because "PLAINTIFFS seek 'an amount of $49,999.99.'" Pet. ¶ 46. Last, within Count III, the MMWA count, the petition states that "PLAINTIFFS are entitled to recovery of all monies paid on the manufactured home and to damages in the form of all out-of-pocket expenses and all other damages, including exemplary and consequential damages as determined by the trier of fact, but not exceeding $49,999.99, plus all costs and actual consumer-attorney-fees as provided for by statute and for whatever other legal and equitable relief the [C]ourt may deem proper." Pet. ¶ 88. The only money they alleged they paid on the home is the $2895 down payment. Pet. ¶ 10. There is nothing on the face of the petition indicating the amount of out-of-pocket expenses, the diminished value of the manufactured home, or any incidental or consequential damages.

Plaintiffs are *pro se* and are attempting to limit their recovery below the jurisdictional threshold by pleading damages under the MMWA at $49,999.99. The Court does not find the

Plaintiffs to be engaging in "artful pleading." Rather, that sum should be accepted unless Defendants can show that the amount in controversy actually meets or exceeds $50,000. *See Keys v. Riverside Trading Co.*, No. A.204CV127LTSJMR, 2005 WL 1523383 (S.D. Miss. June 28, 2005) (remanding case where the plaintiff alleged an MMWA claim but expressly limited the recovery sought to no more than $49,999.00, finding that the assertion was made in good faith and the statute is designed to restrict access to federal courts for claims under $50,000).

Defendants make no attempt to show that the amount in controversy for the MMWA claim is actually $50,000 or more based on the facts or damages pled. Instead, they point to the amount in controversy for Plaintiff's Count I, entitled "Revocation of Acceptance and Breach of Expressed Warranty." In that count, Plaintiffs allege that the manufactured home did not conform to representations and warranties made in the sale. Pet. ¶ 51. Plaintiffs state that they seek "general damages in the amount of $50,000.00." Pet. ¶ 59-60. Plaintiffs pray "for a judgment against the Seller revoking acceptance of the manufactured home, in addition to canceling the installment contract, and for a judgment against DEFENDANTS jointly and severally not to exceed Fifty Thousand ($50,000.00) Dollars together with all costs and expenses associated herein." Thus, Defendants assert that the amount-in-controversy requirement is met because Plaintiffs seek $50,000 in their breach-of-express-warranty claim in Count I, asserting that the other statements in the general portions of the petition and the MMWA count (Count III) attempting to limit the amount in controversy are mere "artful pleading."

But in Count I, Plaintiffs seek to revoke acceptance of the mobile home and rescind the purchase contract, whereas in the MMWA count Plaintiffs seek recovery of all monies paid on the home and damages in the form of out-of-pocket expenses. As noted, Defendants have not shown that the breach-of-warranty damages sought in Count III (the MMWA claim) would

actually exceed $49,999.99. Moreover, under Texas law, rescission is not an available remedy for breach of warranty; it is a remedy for breach of contract. "The UCC recognizes that breach of contract and breach of warranty are not the same cause of action." *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991).[1] The two causes of action have separate remedies. The remedies for breach of warranty are set forth in section 2.714 of the Texas UCC, and are available to a buyer who has finally accepted goods, but discovers that the goods are defective in some manner. *Id.* Thus, Count I, which seeks rescission, may be more properly viewed as a breach-of-contract claim, while Count III (the MMWA claim) is a breach-of-warranty claim.

As previously noted, the measure of damages for breach-of-warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount, plus incidental and consequential damages. No evidence of this amount is set forth in the Notice of Removal. Thus, Defendants have failed to demonstrate that the amount in controversy on the MMWA claim meets the required $50,000 threshold and federal jurisdiction cannot be predicated on that claim. *See Scarlott*, 771 F.3d at 889 (defendants did not meet their burden of establishing by a preponderance of the evidence that the MMWA damages amounted to $50,000 or more where they did not supply any evidence, or even an allegation, as to the value of the car in its defective condition). "Without evidence as to the diminished value of the [mobile home], the court is unable to determine the amount in controversy." *Id.* (citing *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 521–22 (7th Cir.2003) ( "Unfortunately, no party has provided us with the relevant numbers to plug into the [] formula, and we are thus in no position to conclude that jurisdiction under § 2301(d)(1)(B)

---

[1] Under Texas law, the critical factor in whether the buyer has a breach of contract or breach of warranty claim is whether the buyer has finally accepted the goods. *Baker Hughes Process and Pipeline Services, L.L.C. v. UE Compression, L.L.C.*, 938 F.3d 661 (5th Cir. 2019).

existed over the Magnuson–Moss claims."); *Diamond v. Porsche Cars N. Am., Inc*., 70 F. App'x 893, 895 (7th Cir.2003) ("[W]e cannot possibly determine whether the amount in controversy has been met without knowing the value of the car with the alleged defects.")).

HUD Code

Alternatively, Defendants contend that Plaintiffs' petition presents a federal question under this Court's general federal question jurisdiction (28 U.S.C. § 1331) because Plaintiffs seek declaratory relief based on federal Manufactured Home Construction and Safety Standards ("the HUD Code"), 24 C.F.R. § 3280. Defendants contend, "As unambiguously alleged in numbered paragraph 22 of Plaintiffs' Original Petition and Request for Declaratory Relief, Plaintiffs are invoking application of "[t]he Federal Manufactured Home Construction and Safety Standards" as "implement[ing] the National Manufactured Home Construction and Safety Standards of 1974, 42 U.S.C. § 5401, *et seq*." Defendants contend the HUD Code standards are completely preemptive of state law, citing 42 U.S.C. § 5403(d).

But the petition does not attempt to directly assert a claim under the HUD Code or even seek declaratory relief as to its standards. In paragraphs 21 and 22, Plaintiffs state,

> 21. Pete Sepulveda, in the way he presented mandated disclosures, confuses consumers and manufactured home purchasers and/or misstates the law. The standards and requirements for the installation and construction of manufactured housing are adopted by the board in accordance with § 1201.251(a)(1) of the Texas Manufactured Housing Standards Act. *See* § 80.1 (Administrative Rules of the Texas Department of Housing and Community Affairs 10 Texas Administrative Code, Chapter 80).
>
> 22. The construction standards are set out in Chapter VI of the Housing and Community Development Act of 1974. *See* § 80.1 (Administrative Rules of the Texas Department of Housing and Community Affairs 10 Texas Administrative Code Chapter 80)). The Federal Manufactured Home Construction and Safety Standards ("FMHCSS") implements the National Manufactured Home Construction and Safety Standards of 1974, 42 USC 5401, *et seq*. and means a reasonable standard for the construction, design, and performance of a manufactured home which meets the needs of the public including the need for quality, durability, and safety. *See* § 80.2(15) (Administrative Rules of the Texas

Department of Housing and Community Affairs 10 Texas Administrative Code, Chapter 80)).

Pet. ¶¶ 21-22. The Court finds no other mention of the standards in the petition, and the declaratory relief specifically sought is that the acts and practices of Defendants "are contrary to *Texas* law." Pet. ¶ 38 (emphasis added).

While complete preemption may provide a basis for federal question removal of state-law claims, courts have found that the Manufactured Home Construction and Safety Standards Act, 42 U.S.C. § 5401 *et seq*., and the standards and regulations promulgated HUD pursuant to 24 C.F.R. § 3280 and § 3282 ("the HUD Code") do not completely preempt state law claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 620 F. Supp. 2d 755 (E.D. La. 2009); *Hammond v. Cappaert Manufactured Housing, Inc.*, No. 06-0695, 2006 WL 1627809 (W.D. La. June 12, 2006) ("Because the NMHCSSA does not completely pre-empt the Hammonds' claims, it may not serve as a basis for removal."); *Wooldrige v. Redman Homes, Inc.*, 792 F. Supp. 1469 (N.D. Tex. 1991) ("The Federal Act does not preempt these aspects of the Texas Act, however, because the Texas standards are identical to the federal standards and regulations. The Texas Act explicitly adopts all federal safety and construction standards and provides for administration and enforcement remedies pursuant to state law.").

To the extent conflict preemption exists, that is insufficient to provide a basis for removal. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). "Whereas complete preemption establishes federal subject matter jurisdiction over a state law claim, ordinary preemption (variably called 'defensive preemption') is an affirmative defense that a defendant can invoke 'to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law.'" *Spear Marketing, Inc. v. BancorpSouth Bank*, 844 F.3d 464, 467 n.3 (5th Cir. 2016); *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000) ("'Complete preemption,' which creates federal

removal jurisdiction, differs from more common 'ordinary preemption' (also known as 'conflict preemption'), which does not."). Nor does the fact that Plaintiffs' claims may require reference to the federal standards create a basis for federal question jurisdiction. *Runkle v. State of Tex.*, No. 1-15-CV-1141-RP, 2016 WL 756577 (W.D. Tex. Feb. 26, 2016) ("Plaintiff is correct that the Fifth Circuit has regularly found references to federal statutes is not enough alone to establish a federal question.")(citing cases).

**Conclusion**

Having reviewed the file and the applicable law, the Court finds that it lacks subject matter jurisdiction over this case. This case is therefore REMANDED for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c), (d).

It is SO ORDERED.

SIGNED this 22nd day of April, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE